ALBERT DELAFIELD and Others, Individually and as Trustees, etc., of RICHARD DELAFIELD, Deceased, Respondents, *v.* RICHARD DELAFIELD SHIPMAN and EDGAR J. SHIPMAN, Individually and as Executor, etc., Appellants, Impleaded with Others.

*Will — when a devise to several, will be treated as a devise to them as a class — when the survivors take the entire income of the fund.*

The plaintiffs' testator died leaving a widow and six children, the latter ranging in age from twenty-four to thirty-seven years. By his will he gave and devised to his executors and trustees all the rest, residue and remainder of his estate 'in trust, to apply and manage the same for the benefit, support and comfort of my wife and children in the manner following, to wit: in the first place to provide, during the life of my wife, a furnished house as a home for my wife and children, and out of the income of my estate to provide for the expense of keeping said house, so as to enable my said family to live in the manner they have been accustomed to, said house and the keeping of the same to be under the control and direction of my wife, as head of the establishment; secondly, to keep the house and furniture in good repair, and from time to time to renew the worn out furniture; thirdly, to pay all taxes and assessments on the property, and, fourthly, either semi-annually or quarterly to make a dividend of the residue of the income, after satisfying the objects hereinbefore provided for, equally between my wife and my six children aforesaid, so as to give each of said children and my wife an equal share of the whole, and each one is to defray, out of his or her share of said income, his or her personal expenses, such as for wearing apparel, traveling," etc. After the death of his wife his estate was to be divided between the children then living, and the descendants of any deceased child:

*Held,* that the widow and children took the surplus income as a class, during the life of the widow, and that upon the death of one of the children during her life the survivors took the whole of such income, and no portion thereof passed to the descendants of a deceased child or to her devisee.

Appeal from a judgment, construing the will of the late Richard Delafield, entered at the Special Term.

On the 5th of November, 1873, Richard Delafield, then a resident of this State, died, leaving a last will and testament, dated the seventeenth of January of the same year. His family consisted of his wife and six adult children, none of whom were then married. The wife of the testator was sixty-two years of age at the time of his death, and the ages of the children ranged from twenty-four to

thirty-seven. Prior to the death of General Delafield, his family had been accustomed to live during the winter at his residence in I street, Washington, and during the summer at the family residence in West Eighteenth street, New York; and the family have since his death followed this custom.

The will was admitted to probate in November, 1873, and in January, 1875, the plaintiffs became seized and possessed of the property of the testator, upon the trusts contained in two clauses of his will. Such property consisted of certain lots of land in New Orleans, of the value of about $2,000; a dwelling-house in Washington valued at about $25,000; a dwelling-house and certain tenement property in the city of New York valued respectively at $30,000 and $6,000. The bulk of the estate, however, consisted of personal property, securities, etc., and amounted in value to over $300,000. The income from the personal estate is about $21,000 per annum. The net income from the real property, of which he died seized, is about $350 per annum. About $7,000 of the income of $21,000 derived from the personal estate, is required to defray the expenses of maintaining the home directed by the testator to be kept up in the clause of his will below quoted. A balance of such income of about $14,000, is, therefore, left to be disposed of by the trustees as also directed in such clause, which is as follows:

"All the rest, residue and remainder of my estate of every description and wheresoever situated, I give, devise and bequeath to my executors and trustees hereinafter named, in trust, to apply and manage the same for the benefit, support and comfort of my wife and children in the manner following, to wit: In the first place, to provide, during the life of my wife, a furnished house as a home for my wife and children, and out of the income of my estate to provide for the expense of keeping said house, so as to enable my said family to live in the manner they have been accustomed to; said house and the keeping of the same to be under the control and direction of my wife, as head of the establishment; secondly, to keep the house and furniture in good repair, and from time to time to renew the worn-out furniture; thirdly, to pay all taxes and assessments on the property; and fourthly, either semi-annually or quarterly to make a dividend of the residue of the income, after satisfying the objects hereinbe-

fore provided for, equally between my wife and my six children. aforesaid, so as to give each of said children and my wife an equal share of the whole, and each one is to defray, out of his or her share of said income, his or her personal expenses, such as for wearing apparel, traveling," etc. The will further provides:

" Upon the death of my wife, I direct that my executors and trustees shall make an equal division of my whole estate, not herein specifically otherwise disposed of, among and between my children then living, and the descendants of any deceased child who may have married and died leaving issue, so that such descendants of any deceased child shall receive the same share which their parent would have received if living."

The plaintiffs, as trustees, are still performing the duties of the trusts defined in the first-quoted clause in the will, as the testator's wife, now about seventy-three years of age, is still living, as also are all the children of the testator except his daughter Harriet Cecil, who died in June, 1882, leaving a last will and testament. Prior to her death, and in November, 1880, said daughter had intermarried with the defendant Edgar J. Shipman, and the issue of such marriage was the infant defendant Richard Delafield Shipman, now about two years old. By her will the testatrix bequeathed all her property to her husband for life, and, on his death, to their surviving children.

Under such will the defendant, Edgar J. Shipman, claims the dividend in the residue of incomes to which said Harriet Cecil Shipman would have been entitled if living, and on the part of the infant, his guardian contended that such dividend should be paid to said infant, and that the *corpus* vested in him on the death of his mother.

The plaintiffs, as trustees, thereupon commenced this suit to obtain a judicial construction of said will. The questions, therefore, are:

1. Whether or not the children of General Delafield took as a class under the will, and the survivors alone are entitled to share in the surplus of income.

2. Whether such surplus of income was bequeathable and so passed under the will, or whether it descended to the child of Harriet Cecil Shipman

The construction of the two clauses in the will of General Delafield, above quoted, is the subject of the present controversy.

*Charles A. Runk*, for the appellant Edgar J. Shipman.

*William C. Beecher*, guardian *ad litem*, for Richard Delafield Shipman.

*Charles M. Da Costa*, for the respondents.

Brady, J. :

In the construction of a will the intention of a testator is the first and great object of inquiry, and to this technical rules, to a certain extent, are made subservient. (Per Church, Ch. J., in *Hoppock et al.* v. *Tucker et al.*, 59 N. Y., 209.) The intention should be controling. (*Kelso* v. *Lorillard*, 85 N. Y., 177, per Miller, J.)

In the first clause of the will of Mr. Delafield recited, he directed the executors and trustees to pay the whole of his income to the maintenance of his wife and his children during her life in the same household. He imposed upon them the duty of providing during the life of his wife a furnished house as a home for her and the children, and of providing for the expense of keeping it so as to enable his family to live in the same manner as that to which they had been accustomed, the house and the keeping of it to be under the control and direction of his wife as its head, and after the accomplishment of that object, by the proper application of the income, then to pay over to his children and his wife an equal share of the residue thereof, each one of whom, out of the portion of such residue, was to defray individual personal expenses, such as for wearing apparel, traveling, etc. The ages of his children ranging from twenty-four to thirty-seven years, and being all adults, he doubtless entertained the impression that they might remain together and treated them as a class who were to receive equal consideration in the application of the income. He did not contemplate the intervention, in the application of the income of the estate as directed, of any other persons than those named.

The predominating idea evidently was the maintenance of a

household such as he had provided during his existence for his wife and children, and in the same manner as to numbers, and for no other person or persons; his children alone, together with their mother, being the exclusive objects of his bounty in the use of the income of his estate, and he made this disposition of his income evidently contemplating the marriage of one or more of his children, because by the second clause recited he provides for that contingency upon the distribution of the whole of his estate after the death of his wife. And the difference between the disposition of the income, therefore, and the *corpus* of the estate seems to be conclusive evidence of his intention to make a distinction between the two, giving the former to his wife and children as a class, and to them only, and the latter to such of his children as were living upon the death of the mother, and the descendants of such as might have married and died leaving issue. If he had not intended to preserve this distinction, contemplating as he did the marriage of one or more of his children, it is quite clear that he would have made a proper disposition of the share of any child that might die leaving issue, by directing such share to be applied to the maintenance of his grandchild or children. Not having done so confirms the existence of the scheme in his mind of providing for a family mansion, under the roof of which his wife and children should be gathered during her life, and their union thus perpetuated, so far as it could be, through its instrumentality.

The elaborate briefs of the respective counsel engaged in the presentation of this case to this court have been duly considered and the cases referred to examined, but it is not deemed necessary to make any particular reference to them or to the principles enunciated by them. Search has been made in vain for a case presenting similar features to the one in hand, and although in a case of such interest as this it may be a source of regret, nevertheless having discovered with reasonable certainty and perhaps more than reasonable certainty the intention of the testator, which is the guiding star in controversies of this kind, there is no difficulty in pronouncing the ultimate judgment which should control in the distribution of the estate.

The views of the learned justice presiding in the court below, briefly and tersely expressed upon rendering judgment, are suffi

ciently expressive of the proper result, and after due deliberation are adopted, therefore, as conclusive of the question presented.

Davis, P. J., and Daniels, J., concurred.

Order affirmed.